UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAMUEL J. SAELI,

                      Plaintiff,                  DECISION AND ORDER

-vs-

                                                        17-CV-6221 (CJS)

CHAUTAUQUA COUNTY, N.Y.,
et al.,
                      Defendants.

_____

## INTRODUCTION

This action arises out of a series of events that occurred in September 2016, when *pro se* Plaintiff Samuel J. Saeli was being held as a pretrial detainee in the Chautauqua County Jail. The matter is presently before the Court on Defendants' Motion for Summary Judgment on Saeli's excessive force claim against Defendants Genther and Steenburn for an incident occurring on September 24, 2016, and his *Monell* claim against Defendant Chautauqua County for the implementation of an unduly painful handcuffing policy. Mot. Summ. J., Apr. 9, 2019, ECF No. 52. For the reasons stated below, Defendants' motion [ECF No. 52] is granted and the Clerk of Court is directed to close this case.

## FACTUAL BACKGROUND[1]

Saeli was booked at the Chautauqua County Jail on August 17, 2016. Defs.' Statement, ¶ 5, Apr. 9, 2019, ECF No. 52-4. On September 24, 2016, a corrections officer noticed water pooling on the floor outside of Saeli's cell while Saeli's shower was running.

---

[1] The facts that follow were culled from "Defendants' Statement of Undisputed Material Facts" and "Plaintiff's Statement of Disputed Facts." Defs.' Statement, Apr. 9, 2019, ECF No. 52-4; Pl.'s Statement, May 8, 2019, ECF No. 61.

Defs.' Statement at ¶ 24–25.  The officer called out to Saeli, and then called for back-up. Defs.' Statement at ¶ 27–28.  Several officers, including Defendants Genther and Steenburn, responded to the call for back-up.  Defs.' Statement at ¶ 28.  Saeli was ordered to get out of the shower and get dressed, and several officers entered Saeli's cell to handcuff him.  Defs.' Statement at ¶ 30, 32.  Defendants Genther and Steenburn handcuffed Saeli, though the manner in which they did so is in dispute.  Defs.' Statement at ¶ 33; Pl.'s Statement, ¶ 32, May 8, 2019, ECF No. 61.  As a result of the incident, Saeli was found guilty at a disciplinary hearing of failing to obey the officers' orders to get out of the shower and get dressed.  Defs.' Statement at ¶ 35; Pl.'s Statement at ¶ 35.  He was issued a verbal reprimand.  *Id.*

## PROCEDURAL BACKGROUND

Saeli filed his original complaint and a motion to proceed *in forma pauperis* in this Court on April 11, 2017 against over a dozen defendants.  Compl., Apr. 11, 2017, ECF No. 1; Mot., Apr. 11, 2017, ECF No. 2.  In his complaint, Saeli sought relief under 42 U.S.C. § 1983 for numerous alleged violations of his Fourteenth Amendment rights during his pre-trial detainment at the Chautauqua County Jail.  *Id.*  In July 2017, Saeli filed a second complaint under case number 17-CV-6443, which included the same claims and against the same defendants.  Order, 1, Oct. 18, 2017, ECF No. 3.  Because the second complaint also alleged additional conditions of confinement and retaliation claims, and had five additional defendants, this court construed the 17-CV-6443 complaint as an amended complaint in the present action.  *Id.* at 2.  Thereafter, the Court granted Saeli's motion to proceed *in forma pauperis*, screened the amended

2

complaint under 28 U.S.C. §§ 1915(e) and 1915A, and granted Saeli leave to file a second amended complaint.

Saeli filed his second amended complaint on November 11, 2017, against the present Defendants: Chautauqua County, and Corrections Officers Genther and Steenburn. Am. Compl, Nov. 11, 2017, ECF No. 6. The Court screened Saeli's second amended complaint under 28 U.S.C. §§ 1915(e) and 1915A, and permitted Saeli to proceed with his excessive force claim against Officers Genther and Steenburn for an incident occurring on September 24, 2016, as well as his *Monell* claim against Chautauqua County for an unduly painful handcuffing policy. Order, 4–5, Sept. 6, 2018, ECF No. 11.

Now before the Court is Defendants' motion for summary judgment on both of Saeli's excessive force claims. Consistent with the Second Circuit's mandate in *Irby v. N.Y. City Transit Auth.*, 262 F.3d 412, 414 (2d Cir. 2001), at the same time that Defendants served their summary judgment motion papers on Saeli, they also served a document entitled "IMPORTANT NOTICE TO PRO SE LITIGANTS" advising Saeli of the consequences of failing to adequately respond to the motion for summary judgment. Certificate of Service, Apr. 9, 2019, ECF No. 57.

## SUMMARY JUDGMENT STANDARD

It is well settled that summary judgment may not be granted unless "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party moving for summary judgment bears the burden of establishing that no genuine issue of material fact exists.

3

*See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  "A party asserting that a fact . . . cannot be genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record . . . ."  Fed.R.Civ.P. 56(c)(1).

Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  To do this, the non-moving party must present evidence sufficient to support a jury verdict in its favor.  *Anderson*, 477 U.S. at 249.  The Court treats the papers of *pro se* plaintiffs such as Saeli "with special solicitude, mindful that they must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Telesford v. Wenderlich*, No. 16-CV-6130 CJS, 2018 WL 4853667, at *5 (W.D.N.Y. Oct. 5, 2018) (quoting *Cicio v. Wenderlich*, 714 F. App'x 96, 97 (2d Cir. 2018)).  Nevertheless, the non-movant cannot oppose a properly-supported summary judgment motion with bald assertions that are not supported by the record.  *See, Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999).  Rather, the non-movant must support its assertion that a fact is genuinely disputed by citing to particular parts of the record or showing that the materials cited by the movant are inadmissible or do not establish the absence of a genuine dispute.  Fed. R. Civ. P. 56(c)(1).

Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party."  *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir. 1993).  The underlying facts contained in affidavits, attached

4

exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## DISCUSSION

Saeli claims that "[a]s a result of the amount of force used by [Defendants Genther and Steenburn during the September 24, 2016 incident], [Saeli] did suffer injuries to his back, shoulders and permanent damage to [his] right hand and wrist, which includes loss of strength and dexterity to [his] right hand." Am. Compl. at 9. Saeli also presents a *Monell* claim against Defendant Chautauqua County, arguing that the county's handcuffing policy "is designed to inflict pain, discomfort, torture and abuse" of the individuals in custody of the Sheriff. Am. Compl. at 2.

In response, Defendants argue that Saeli failed to exhaust his administrative remedies with respect to both his excessive force claim against Defendants Genther and Steenburn and his *Monell* claim against the County, that medical records show no causally-related injury, and that Defendants Genther and Steenburn are entitled to the defense of qualified immunity. Defs.' Mem. of Law, 2—16, Apr. 9, 2019, ECF No. 52-5. Defendants also argue that Saeli's *Monell* claim must be dismissed because he fails to establish a constitutional violation. *Id.* at 16.

Because Saeli's excessive force and *Monell* claims fail on exhaustion grounds, the Court need not reach the merits. *Feaster v. U.S. Bureau of Prisons*, 37 F. App'x 15, 17 (2d Cir. 2002).

<u>Saeli failed to exhaust his administrative remedies</u>.

42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to

5

prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Hence, pursuant to § 1997e(a), Saeli was required to exhaust his administrative remedies for both his excessive force and his *Monell* claims.

Significantly, a prisoner is required to exhaust only those administrative remedies that are "available." The Supreme Court has identified three circumstances "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). An administrative remedy is not "available": (1) when the remedy operates as a dead end, (2) when the process is "so opaque that it becomes, practically speaking, incapable of use," and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 1859–1860.

As the Second Circuit has stated, "[w]hether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Hubbs v. Suffolk Cty. Sheriff's Dep't*, 788 F.3d 54, 59 (2d Cir. 2015) (citing *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir.1999)). Because failure to exhaust is an affirmative defense, defendants bear the initial burden of establishing that a grievance process exists and applies to the underlying dispute. *Id*. "If the defendants meet this initial burden, administrative remedies may nonetheless be

6

deemed unavailable if the plaintiff can demonstrate that other factors—for example, threats from correction officers—rendered a nominally available procedure unavailable as a matter of fact." *Id.* (citing *Hemphill v. New York*, 380 F.3d 680, 687–88 (2d Cir. 2004)).

In the instant case, the Defendants have satisfied their burden to show that a grievance process exists and applies to Saeli's claims.  Chautauqua County Jail's grievance procedure is undisputed, and Saeli's extensive use of the process (described below) demonstrates his familiarity with it.  As detailed in the Chautauqua County Jail Inmate Handbook, the grievance process is as follows:

> Attempt to resolve your complaint . . . with your housing officer.  If the housing officer cannot resolve your complaint . . . the shift supervisor [ ] will decide if your complaint warrants filing a grievance or can be otherwise resolved.  If the complaint cannot be resolved, the shift supervisor will contact the grievance coordinator and you will be issued a grievance.  The grievance must be filed with the grievance coordinator within 5 days of the date of the act or occurrence that caused the complaint . . . .
>
> After the grievance is filed, the allegations will be investigated by an impartial party and a written determination will be returned to you within 5 business days.  You have 2 business days to appeal the original determination with the jail captain or his designee.  The jail captain will issue a written determination within 5 business days of the appeal.
>
> If you wish to appeal a grievance denial by the jail captain, you must do so within 3 business days of the jail captain's written determination.  You must appeal to the State Commission of Correction by indicating you wish to do so on the grievance form.  The grievance coordinator will mail the appeal within 3 business days of your indication to the Commission's Citizen's Policy and Complaint Review Council.  The Review Council shall issue a written determination to the appeal within 45 business days after it has been mailed.

Defs.' Decl., Ex. E, 30, Apr. 9, 2019, ECF No. 55-5.

It is also undisputed that during his time at the jail, Saeli utilized the foregoing

grievance process to file approximately 21 grievances, and appealed 13 of them.  Def. Statement at ¶ 18; Pl. Statement at ¶ 18.  Saeli filed grievances related to his housing assignments, temperature in his unit, maltreatment by other inmates, shower conditions, conditions in his cell, the size of his meal portions, and failure to get his newspaper delivered.  Defs.' Decl., Ex. G, Apr. 9, 2019, ECF No. 55-7.  Saeli also filed a series of grievances in 2017 that alleged he was being harassed and retaliated against by corrections officers for filing grievances.  Defs.' Decl., Ex. G at 29–42, 85–86.  The harassment and retaliation grievances were denied because Saeli did not include specific names or instances of harassment.  *Id*.  Then, in 2018, Saeli filed a grievance claiming a specific officer singled him out to intimidate and harass him, and another grievance that a different officer violated his constitutional rights by confiscating his property.  Defs.' Decl., Ex. G at 100–136.  After investigation, those claims were found to be unsubstantiated, too.  *Id*.

There is no record of a grievance filed regarding the September 24, 2016 incident, or about the handcuffing process at the Chautauqua County Jail to which Saeli was subjected in connection with such incident.  Saeli admits that he did not follow the jail's grievance process against Defendants Genther and Steenburn, but claims it was because he "was denied access to the jail's grievance program."  Pl.'s Mem., 8, May 8, 2019, ECF No. 61-1.  Specifically, Saeli claims that he attempted to file a grievance, but that an individual he identifies as Officer Fuller told him not to. Saeli alleges that he feared Officer Fuller would retaliate if he filed a grievance.  As evidence, Saeli points to an unsigned informal grievance form in his handwriting, dated September 25, 2016, which

8

describes the September 24, 2016 incident in conclusory fashion, and details several other, unrelated complaints. Pl.'s Ex. C, 7, May 8, 2019, ECF No. 62-6.

At his 50-h hearing on March 15, 2018, Saeli described his exchange with Officer Fuller as follows:

> SAELI: After the September 24th incident, I tried to file a grievance. I filled it out. I gave it to Lieutenant Fuller, who was making the rounds at that time. He looked at it, and he said, don't hand that in. So I thought, you know, I don't want to upset him, I don't want to be retaliated against or anything. I took it back, and I wrote a letter to the New York State Commission of Corrections about the incident and what happened . . . .
>
> ATTORNEY: What made you think [filing the grievance would upset Lieutenant Fuller]?
>
> SAELI: Just by the way – just by the manner in what he said. He looked at it, and he said, don't hand that in. I got a little fearful of actually filing the grievance . . .
>
> ATTORNEY: So he at no point threatened you or anything like that, correct?
>
> SAELI: No . . . .
>
> ATTORNEY: What made you nervous?
>
> SAELI: I've never seen anybody reject a grievance before . . . . It was just kind of, like, just, you know, don't file it, don't do anything with it, kind of like, or else.
>
> ATTORNEY: But he never said that, correct?
>
> SAELI: No.

Tr., 67:7–71:17, June 14, 2019, ECF No. 66-5.

In addition to arguing that an administrative remedy was "unavailable" due to his fear of retaliation by Officer Fuller, Saeli also argues that he pursued all administrative remedies by sending a letter about the incident to the New York State Commission of

9

Corrections. Pl.'s Ex. D, 9–14, May 8, 2019, ECF No. 62-6. In that letter, Saeli complained about several things, including the manner in which he was handcuffed and shackled on August 29, 2016, his movement out of a privileged housing unit to a hospital unit within the jail on September 19, 2016, and the September 24, 2016 incident involving Defendants Genther and Steenburn, which Saeli mistakenly dated as September 30, 2016. *Id.*

Saeli's letter to the Commission was investigated by the Chautauqua County Sheriff's Office on November 21, 2016. Pl.'s Ex. B, 3–7, May 8, 2019, ECF No. 62. As part of the investigation, the investigating officers collected a supporting deposition from Saeli. Pl.'s Ex. B at 5–6. Following the investigation by the Sheriff's Office, the complaint was closed and a copy was provided to the jail captain. Pl.'s Ex. B at 4. On November 22, 2016, Saeli sent a letter to "Undersheriff Holder" informing him of the investigation and of the injuries the September 24 incident caused to his arms, hands and wrists, and asking that Undersheriff Holder "have someone take pictures of my cuts and bruises for the [record]." Pl.'s Ex. B at 7.

The Court finds no merit in Plaintiff's argument that he did not file a grievance because he was afraid of retaliation by Officer Fuller. On its face, Plaintiff's claim is inconsistent with the fact that he proceeded to send a letter to the State Corrections Commission, participated in the Sherriff's Office investigation into the incident in November 2016, wrote a letter to the Undersheriff about the incident, filed the instant action, and filed a series of other grievances against other corrections officers, all while still an inmate at the Chautauqua County Jail. Moreover, "[a] general fear of retaliation

is not an exception to the PLRA's exhaustion requirement." *Rodriguez v. Westchester Cty. Jail Corr. Dep't, Assoc.*, No. 98 CIV.2743 RPP, 2002 WL 1933953, at *3 (S.D.N.Y. Aug. 21, 2002) (citing *Hines v. Valhalla Cty. Corr. Facility*, No. 0C CIV.6935(SAS), 2002 WL 1822740, at *3 (S.D.N.Y. Aug. 8, 2002)).  Viewing Saeli's exchange with Officer Fuller in a light most favorable to Saeli, Officer Fuller's comment – "don't file that" – without more does not rise to the level of "thwarting" Saeli from taking advantage of a grievance process through intimidation.

In addition, Saeli's letter to the State Corrections Commission does not excuse him from his failure to follow the particular steps of the grievance process.  The Supreme Court has specifically addressed the importance of following each individual step in the grievance process to satisfy 42 U.S.C. § 1997e(a):

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits) . . . . Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.

*Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006) (internal quotation marks and citations omitted) (emphasis in the original).  With respect to Saeli's excessive force claim, his failure to file a grievance denied the jail the opportunity to fully and fairly adjudicate the claim.

With respect to his *Monell* claim, Saeli argues that he was told by jail officials

11

"that the method of handcuffing individuals is not grievable and although I was denied a grievance for this claim, I did write to the New York State Commission of Corrections promptly and directly."  Am. Compl. at 6.  As indicated above, proper exhaustion "demands compliance with an agency's deadlines and other critical procedural rules." *Woodford*, 548 U.S. at 91.  Moreover, to meet his burden under Fed.R. 56(c)(1), Saeli must point to particular parts of the record to rebut Defendants' showing that he failed to follow the jail's grievance process. Saeli's conclusory assertion that he was told the handcuffing offense is not grievable, without further elaboration on the names or circumstances of the statement, is not sufficient to meet his burden.  *See, e.g., Bennett v. James*, 737 F. Supp.2d 219, 226 (S.D.N.Y. 2010) (finding plaintiff failed to exhaust where "[h]e provides no information as to who . . . misinformed him – or where and when these alleged interactions took place.").

Accordingly, the Court finds that Saeli failed to properly exhaust his administrative remedies pursuant to 42 U.S.C. § 1997e(a) and may not pursue this action.

## CONCLUSION

For the reasons stated above, it is hereby

ORDERED that Defendants' motion for summary judgment [ECF No. 52] is granted with respect to all remaining claims, and the Clerk of Court is directed to close this case.

In addition, the Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the

Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: June 30, 2020
      Rochester, New York

*/s/ Charles J. Siragusa*
CHARLES J. SIRAGUSA
United States District Judge